Humes, P.J.
Defendant Julius Jackson stole chairs from a home-staging business, and the police soon found him with the chairs in a stolen vehicle. A jury convicted him of felony counts of unlawfully taking or driving a vehicle and second degree robbery. The trial court sentenced him to 12 years in prison, composed of two five-year terms for prior felony convictions, a two-year term for robbery, and a concurrent two-year term for unlawfully taking or driving a vehicle.
On appeal, Jackson raises several claims, including that his conviction for unlawfully taking or driving a vehicle under Vehicle Code section 10851, subdivision (a) ( section 10851(a) ) must be reversed because the vehicle's value was not proven. In the published portion of this decision, we agree. Under *82 People v. Page (2017) 3 Cal.5th 1175, 225 Cal.Rptr.3d 786, 406 P.3d 319 ( Page ), which was not decided until after the trial in this case, a defendant cannot be convicted of a felony violation of section 10851(a) based on the theft of a vehicle unless the vehicle is worth more than $950. Since the jury here was not so instructed, it could have relied on a legally invalid theory to convict Jackson.
The presumption of prejudice that arises with this type of instructional error was not overcome. Although there was strong evidence that Jackson unlawfully drove a vehicle, which could have supported the felony conviction without regard to the vehicle's value, we cannot conclude beyond a reasonable doubt that the jury unanimously relied on this theory. (See People v. Chiu (2014) 59 Cal.4th 155, 167, 172 Cal.Rptr.3d 438, 325 P.3d 972 ( Chiu ).) Accordingly, we must reverse the conviction, and on remand the People will have the choice of either accepting the conviction's reduction to a misdemeanor or retrying the charge as a felony. We reject Jackson's remaining claims and otherwise affirm his convictions.
I.
FACTUAL AND PROCEDURAL BACKGROUND
On the afternoon of September 12, 2016, an employee of the home-staging business carried four wicker chairs from the company's San Mateo warehouse to a delivery van parked nearby on the street. Realizing that he had forgotten his keys, he left the chairs on the sidewalk by the van and began walking back to the warehouse. He saw a man he later identified as Jackson approaching down the street, which prompted him to return to the van without retrieving his keys.[1] The employee then saw Jackson putting the chairs in a Toyota Land Cruiser.
The employee approached Jackson and told him that the chairs belonged to the home-staging business "[a]nd that if he was taking them, he was stealing them." Jackson "got upset" and turned toward the employee, giving him an "angry" look. At trial, the employee demonstrated the movements Jackson then made. As described for the record, to demonstrate these movements the employee "stood up, clenched his fists, raised them slightly above waist level or belt level and then brought them down, both down in a quick gesture towards the ground." The employee said that Jackson also puffed out his chest. Jackson then said, "Fuck," but the employee was unsure if the curse was directed at him.
The employee testified that Jackson's movements and curse made him feel "afraid," and he confirmed that he was "afraid that [Jackson] was going to hurt [him] if [he] tried to get the chairs back." The employee explained he wanted to avoid a fight with Jackson because he had an injured shoulder. Instead of trying to reclaim the chairs, the employee used his cell phone to take photographs of Jackson, which were admitted at trial, before returning to the warehouse to seek help.
The theft of the chairs and a description of the Land Cruiser, including its license-plate number, were quickly reported to the San Mateo police. The police contacted the Land Cruiser's registered owner, who lived in San Mateo. Until hearing from the police, the owner did not realize that the Land Cruiser was missing. Although the *83 vehicle was normally parked down the street from the owner's home, the owner's adult daughter, who lived in San Francisco, often used the Land Cruiser when she was visiting. About a week earlier, she parked it at the San Mateo CalTrain station and left the keys by the front tire, as she had done before. She usually told her father when she parked the Land Cruiser there, but she forgot to tell him on this occasion.
Within hours of talking to the Land Cruiser's owner, the police located the vehicle parked in San Mateo. Jackson was sleeping inside a sleeping bag in the front passenger's seat. After verifying the vehicle was still reported stolen, the police removed Jackson and handcuffed him. The wicker chairs were in the trunk, and the Land Cruiser's keys and registration were in Jackson's pocket. The owner and his daughter testified that they did not give Jackson permission to use the vehicle.
Jackson was charged with felony counts of unlawfully taking or driving a vehicle, second degree robbery, and receiving a stolen vehicle.[2] The jury convicted him of unlawfully taking or driving a vehicle and robbery. It did not return a verdict on the charge of receiving a stolen vehicle, however, having been instructed not to reach that charge if it found Jackson guilty of unlawfully taking or driving a vehicle.
The trial court found true allegations that Jackson had two prior serious-felony convictions, one in 1989 for robbery and one in 1997 for assault with a deadly weapon.[3] After granting his Romero[4] motion as to the strike findings under section 1170.12, subdivision (c)(1), the court sentenced him to 12 years in prison, composed of a term of two years for the robbery, a concurrent term of two years for the unlawful taking or driving of a vehicle, and two consecutive five-year terms under section 667, subdivision (a) for the prior convictions.
II.
DISCUSSION
A. Jackson's Fair-cross-section Claim Is Meritless.**
B. Jackson's Felony Conviction for Unlawfully Taking or Driving a Vehicle Cannot Stand.
As we have said, Jackson claims that his conviction for unlawfully taking or driving a vehicle under section 10851(a) must be reversed because no evidence of the Land Cruiser's value was introduced, as required to support a felony conviction for theft of the vehicle under Page . The Attorney General concedes that the jury instruction on the charge improperly failed to inform the jury that it needed to find the vehicle was worth more than $950 to support a felony conviction based on theft of the vehicle. He argues that the error was harmless, however, because "it is clear beyond a reasonable doubt" that the jury convicted Jackson of unlawfully driving the vehicle. We cannot agree. Despite the strong circumstantial evidence that Jackson *84 drove the Land Cruiser, we are unable to conclude beyond a reasonable doubt that the verdict was necessarily based on this theory. (See Chiu, supra , 59 Cal.4th at p. 167, 172 Cal.Rptr.3d 438, 325 P.3d 972.)
1. Additional facts.
Count two of the information charged that, "[o]n or about September 12, 2016, ... the crime of Driving Or Taking A Vehicle Without Consent in violation of [ section 10851(a) ], a Felony, was committed in that [Jackson] did drive a vehicle, [the Land Cruiser], without the consent of the owner, ... and with the intent to deprive the owner of title and/or possession of the vehicle." The verdict form ultimately returned on this count stated that Jackson was guilty "of the crime of Unlawfully Taking or Driving a Vehicle, in violation of [ section 10851(a) ], a felony, as alleged in Count 2 of the Information filed herein." (Boldface omitted.)
The jury was instructed under CALCRIM No. 1820 that to prove Jackson guilty of violating section 10851(a), the prosecution was required to establish that "1. The defendant took or drove someone else's vehicle without the owner's consent; [¶] AND [¶] 2. When the defendant did so, he intended to deprive the owner of possession or ownership of the vehicle for any period of time." No unanimity instruction was given.
In closing argument, the prosecutor concentrated on the driving theory of guilt for the section 10851(a) charge, arguing that even though the employee had not explicitly testified that Jackson drove the Land Cruiser, the only reasonable inference was that Jackson drove the vehicle away after stealing the chairs. But the prosecutor also referred in his closing statement to a separate theory of guilt, which he sometimes referred to as "taking" and other times referred to as "possessing" the vehicle.
In explaining that Jackson could not "be found guilty of both" the section 10851(a) charge and the charge of receiving a stolen vehicle under section 496d, the prosecutor stated, "So even though it's basically the same conduct and they are related, driving the car or having possession of the car versus receiving it, the law says you can't be guilty of both taking something and then receiving it. ... [¶] So there might be a lack of proof as to the taking or the possession of the vehicle. If that's the case-I'm not saying there is, but I'm saying if there was, then you would sign the not guilty for [the section 10851(a) charge] and then move on to [the section 496d charge]."
And in addressing the elements of the section 10851(a) charge, the prosecutor stated, "Count 2, again this is CALCRIM [No.] 1820. It's the unlawful taking or driving-there is that word again, 'or'-of a vehicle. And then there is the Vehicle Code section which relates to what you see on the verdict form. [¶] So defendant took or drove the ... vehicle without consent, and when he took it, he intended to deprive [the owner] of possession or ownership for any period of time. So it's not like he was just taking it briefly and you are going to give it back or something. Has to be you are going to actually take it and not give it back."
In urging that circumstantial evidence was sufficient to support a conviction, the prosecutor also said, "Common sense tells you that of course [Jackson] had possession of the vehicle and of course he also drove it. Remember, it has to be one or the other. [¶] Clearly, he possessed it. ... [¶] ... [¶] ... It's [also] pretty clear that he drove the car away. That's one of the ... ways to prove it. The other way is the possession of the stolen car."
*85 Finally, in addressing the section 496d charge, the prosecutor said, "Remember I said before you can't be guilty of two different crimes if you steal something, take it and receive it. If for some reason you say, hey, [the prosecutor] did not prove Count 2 that [Jackson] either possessed or drove the stolen vehicle or that he didn't know it was stolen, if you think that's lacking, then you would sign that not guilty verdict form for Count 2 and then you move on to Count 3."
2. Discussion.
A violation of section 10851(a) is a "wobbler" offense that may be punished as either a misdemeanor or a felony. ( Page, supra , 3 Cal.5th at p. 1181, 225 Cal.Rptr.3d 786, 406 P.3d 319.) Under that provision, "[a]ny person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent to either permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle ..., is guilty of a public offense." ( § 10851(a).) "[S]ection 10851(a) 'proscribes a wide range of conduct' " from stealing a car to joyriding. ( People v. Garza (2005) 35 Cal.4th 866, 876, 28 Cal.Rptr.3d 335, 111 P.3d 310 ( Garza ).) Because the provision "separately prohibits the acts of driving a vehicle and taking a vehicle ..., a defendant who steals a vehicle and then continues to drive it after the theft is complete commits separate and distinct violations of section 10851(a)."[5] ( Id. at p. 880, 28 Cal.Rptr.3d 335, 111 P.3d 310.)
Under Proposition 47 (the "Safe Neighborhoods and Schools Act"), which went into effect before Jackson committed the crime here, " 'an offender who obtains a [vehicle] valued at [$950 or less] by theft must be charged with petty theft and may not be charged as a felon under any other criminal provision.' " ( Page, supra , 3 Cal.5th at p. 1183, 225 Cal.Rptr.3d 786, 406 P.3d 319 ; § 496, subd. (a).) The unlawful taking of a vehicle with the intent to permanently deprive the owner of possession is a theft offense, but the unlawful driving of a vehicle is not.[6] ( Page , at p. 1183, 225 Cal.Rptr.3d 786, 406 P.3d 319 ; People v. Gutierrez (2018) 20 Cal.App.5th 847, 854, 229 Cal.Rptr.3d 531 ( Gutierrez ).) Thus, some violations of section 10851(a) are punishable only as misdemeanors, and some are punishable as either misdemeanors or felonies. ( Page , at p. 1183, 225 Cal.Rptr.3d 786, 406 P.3d 319.)
We begin by agreeing with the parties that instructional error occurred. This error was eminently understandable since Page was not decided until several months after Jackson's trial. Still, if a felony conviction under section 10851(a) is "predicated on vehicle theft," the prosecution is "required to prove as an element of the crime that the [vehicle taken] was worth more than $950." ( Gutierrez, supra , 20 Cal.App.5th at pp. 855-856, 229 Cal.Rptr.3d 531 ; accord People v. Bussey (2018) 24 Cal.App.5th 1056, 1061-1062, 235 Cal.Rptr.3d 348 ( Bussey ).) Here, the challenged instruction failed to include this directive and instead "allowed the jury to *86 convict [Jackson] of a felony violation of section 10851 [ (a) ] for stealing the [Land Cruiser], even though no value was proved-a legally incorrect theory-or for a nontheft taking or driving offense-a legally correct one."[7] ( Gutierrez , at p. 857, 229 Cal.Rptr.3d 531.)
We therefore turn to consider whether the error was harmless. "When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground." ( Chiu, supra , 59 Cal.4th at p. 167, 172 Cal.Rptr.3d 438, 325 P.3d 972.) Unlike with other types of instructional error, prejudice is presumed with this type of error. "[T]he presumption is that the error affected the judgment: ' "Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law .... When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error." ' " ( In re Martinez (2017) 3 Cal.5th 1216, 1224, 226 Cal.Rptr.3d 315, 407 P.3d 1.)
This presumption of prejudice is rebutted only if the record permits the conclusion "beyond a reasonable doubt that the jury based its verdict on [a] legally valid theory."[8] ( Chiu, supra , 59 Cal.4th at p. 167, 172 Cal.Rptr.3d 438, 325 P.3d 972 ; see In re Martinez, supra , 3 Cal.5th at p. 1224, 226 Cal.Rptr.3d 315, 407 P.3d 1.) Sometimes, " 'other aspects of the verdict ... [will] leave no reasonable doubt that the jury made the findings necessary' under a legally valid theory." ( Martinez , at p. 1226, 226 Cal.Rptr.3d 315, 407 P.3d 1, quoting People v. Chun (2009) 45 Cal.4th 1172, 1205, 91 Cal.Rptr.3d 106, 203 P.3d 425.) Other times, even if the verdict alone does not establish that the necessary findings were made, the evidence will leave no reasonable doubt that the jury made the necessary findings. Thus, an instruction on a legally invalid theory is also harmless " 'if it is impossible, upon the evidence, to have found what the verdict did find' " without also making the findings necessary under a legally correct theory. ( Chun , at p. 1204, 91 Cal.Rptr.3d 106, 203 P.3d 425.) The Supreme Court has left open the possibility that such error may be deemed harmless for other reasons as well. ( Id. at pp. 1204-1205, 91 Cal.Rptr.3d 106, 203 P.3d 425.)
*87 The presumption of prejudice in this case has not been overcome. The Attorney General claims "it is clear beyond a reasonable doubt" that the jury convicted Jackson on a "valid posttheft driving theory" because "[t]he information showed a clear election by the prosecution to proceed on the driving theory." We are not convinced. True, the information charged Jackson with driving only, and the verdict form stated he was found guilty of the crime as alleged in the information. But CALCRIM No. 1820 allowed the jury to convict on either a taking or driving theory, and the prosecutor did not elect the driving theory in closing argument. (See People v. Melhado (1998) 60 Cal.App.4th 1529, 1539, 70 Cal.Rptr.2d 878 ["If the prosecution is to communicate an election to the jury, its statement must be made with as much clarity and directness as would a judge in giving instruction"].) Rather, the prosecutor mentioned both a taking theory and a "possessing" theory several times, the latter perhaps referring to the principle that "[m]ere possession of a stolen car under suspicious circumstances is sufficient to sustain a conviction of unlawful taking."[9] ( People v. Clifton (1985) 171 Cal.App.3d 195, 200, 217 Cal.Rptr. 192.) Given that both CALCRIM No. 1820 and the prosecutor's arguments gave the jury the option of convicting Jackson of unlawfully taking the Land Cruiser, the verdict form's wording does not allow us to conclude beyond a reasonable doubt that the jury relied on a driving theory.
The omission of a unanimity instruction raises additional doubts about the verdict's basis. A unanimity instruction is required where " 'one criminal act is charged, but the evidence tends to show the commission of more than one such act' " and the prosecution does not " ' "elect the specific act relied upon to prove the charge." ' " ( People v. Brown (2017) 11 Cal.App.5th 332, 341, 217 Cal.Rptr.3d 589.) Although Jackson does not argue for reversal based on the omission of such an instruction, the prosecution's failure to clearly elect between taking and driving leaves the possibility that the jurors did not agree on the same act in returning the conviction. Thus, we cannot find the instructional error harmless unless we can conclude beyond a reasonable doubt that not a single juror relied on taking instead of driving to convict Jackson.[10] (See People v. Melhado, supra , 60 Cal.App.4th at p. 1539, 70 Cal.Rptr.2d 878.) We cannot so conclude.
*88 The Attorney General argues that a taking of the vehicle was "unsupported by any evidence," but we disagree. While the evidence of driving may have been stronger than the evidence of taking, substantial evidence was introduced to support a conviction for stealing the Land Cruiser, based on Jackson's possession of it under suspicious circumstances shortly after it was stolen. (See People v. Clifton, supra , 171 Cal.App.3d at pp. 199-200, 217 Cal.Rptr. 192 ; see also People v. Wissenfeld (1951) 36 Cal.2d 758, 763-764, 227 P.2d 833 [sufficient evidence to sustain conviction for theft of car where car found in defendant's possession 25 days after being stolen].) Nor does the evidence permit us to conclude that no juror could have found that Jackson stole the vehicle without also finding that he engaged in posttheft driving. (See People v. Chun, supra , 45 Cal.4th at p. 1205, 91 Cal.Rptr.3d 106, 203 P.3d 425.) The employee did not testify that he ever saw Jackson drive the Land Cruiser, Jackson was not driving the vehicle when the police discovered him, and there was no other direct evidence of driving that compelled the conclusion that if Jackson stole the vehicle, he also drove it after the theft. In short, we are unable to conclude that the instructional error was harmless.[11]
We agree with the Attorney General that the appropriate remedy is to remand for the People to elect whether to retry Jackson on a felony charge or accept the conviction's reduction to a misdemeanor. Therefore, following Bussey and Gutierrez , we will reverse the conviction, vacate the sentence, and remand for the People to make such an election. ( Bussey, supra , 24 Cal.App.5th at pp. 1062, 1064, 235 Cal.Rptr.3d 348 ; Gutierrez, supra , 20 Cal.App.5th at pp. 858, 863, 229 Cal.Rptr.3d 531.)
C.-D.***
III.
DISPOSITION
The conviction for unlawful taking or driving of a vehicle under section 10851(a) is reversed, the sentence is vacated, and the matter is remanded for further proceedings consistent with this opinion. On remand, the People may elect to accept a reduction of the section 10851(a) conviction to a misdemeanor, in which case the trial court is to resentence Jackson accordingly, or to retry him for a felony violation of section 10851(a). In all other respects, the convictions are affirmed.
We concur:
Dondero, J.
Banke, J.

Shortly after Jackson was arrested, the employee identified him during an in-field showup with "[a] hundred percent" certainty. At trial, the employee was unable to identify Jackson, but he described the man who stole the chairs as being aged 45 to 55 years old, having an Afro, and wearing a Giants jacket and blue jeans. At the time of his arrest, Jackson was 55 years old, had an Afro, and was wearing clothes fitting that description.

The charges were brought under section 10851(a) (unlawfully taking or driving vehicle) and Penal Code sections 212.5, subdivision (c) (robbery) and 496d, subdivision (a) (receiving stolen vehicle). All further statutory references are to the Penal Code unless otherwise noted.

Although Jackson thus had two prior convictions for violent or serious felonies, or strikes, in addition to the strike for the robbery conviction in this case, the prosecution elected to treat him as a two-strikes offender instead of a three-strikes offender.

People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628.

See footnote *, ante .

We will use the term "posttheft driving" to refer to driving that "occurs or continues after the theft is complete"; driving that occurs during the taking is not a separate violation of section 10851(a). (Garza, supra , 35 Cal.4th at p. 871, 28 Cal.Rptr.3d 335, 111 P.3d 310.)

The unlawful taking of vehicle with the intent to deprive the owner of possession only temporarily-i.e., joyriding-is not a theft offense either. (Page, supra , 3 Cal.5th at p. 1183, 225 Cal.Rptr.3d 786, 406 P.3d 319.) For the sake of simplicity, our subsequent discussion omits references to joyriding, because there is no evidence Jackson violated section 10851(a) in that way.

Relying on In re D.N. (2018) 19 Cal.App.5th 898, 228 Cal.Rptr.3d 267, Jackson argues that his challenge can also be framed as a claim of insufficient evidence which, if successful, would bar retrial of the charge. (Id. at pp. 903-904, 228 Cal.Rptr.3d 267.) We agree with the Gutierrez and Bussey courts that, at least where the evidence would have also permitted conviction on a theory not requiring proof of the vehicle's value, the issue is properly analyzed as one of instructional error. (Bussey, supra , 24 Cal.App.5th at pp. 1062-1063, 235 Cal.Rptr.3d 348 ; Gutierrez, supra , 20 Cal.App.5th at pp. 857-858, 229 Cal.Rptr.3d 531 ; compare D.N. , at pp. 900-901, 228 Cal.Rptr.3d 267 [minor charged with "theft of a vehicle" and no evidence of posttheft driving].)

The Second District Court of Appeal recently held, as to the principle requiring reversal absent a basis in the record to conclude the jury relied on a legally valid theory, that the "basis exists only when the jury has 'actually ' relied upon the valid theory [citations]; absent such proof, the conviction must be overturned-even if the evidence supporting the valid theory was overwhelming." (People v. Aledamat (2018) 20 Cal.App.5th 1149, 1153, 229 Cal.Rptr.3d 771, review granted July 5, 2018, S248105.) We disagree with any suggestion that a finding of harmlessness requires affirmative proof of the jury's reliance on a legally valid theory.

Possession was also relevant to the section 496d charge. As to that crime, the jury was instructed, "To receive property means to take possession and control of it. Mere presence near or access to the property is not enough." The prosecutor referred to "possessing" when addressing the section 10851(a) charge, however, so it is less likely he meant to refer to an element of the crime of receiving stolen property.

Further confusing matters, the jury was improperly instructed under CALCRIM No. 3516 that the section 10851(a) and section 496d charges were "alternative charges" and that if it found Jackson "guilty of one of these charges, [it could not] find him guilty of the other." In fact, dual convictions under these statutes are barred only when a defendant is convicted of a theft offense under section 10851(a) -i.e., of "taking a car with the intent to permanently deprive the owner of possession." (Garza, supra , 35 Cal.4th at p. 876, 28 Cal.Rptr.3d 335, 111 P.3d 310 ; People v. Calistro (2017) 12 Cal.App.5th 387, 401, 218 Cal.Rptr.3d 765.) But if a defendant is convicted under section 10851(a) for a nontheft offense-either joyriding or posttheft driving-dual convictions are permissible. (Ibid. ) Had the jury been correctly instructed on this point, its failure to return a verdict on the section 496d charge would demonstrate it relied on a theft theory to convict Jackson. Because of this instructional error, however, the jury's treatment of the section 496d charge sheds no light on the basis for the section 10851(a) conviction.

We are aware of other decisions that, relying on overwhelming evidence of posttheft driving, found harmless instructional errors related to the principle that a jury cannot convict a defendant of receiving a stolen vehicle if it convicts the defendant of theft of the same vehicle under section 10851(a). (E.g., Garza, supra , 35 Cal.4th at pp. 880-882, 28 Cal.Rptr.3d 335, 111 P.3d 310 ; People v. Cratty (1999) 77 Cal.App.4th 98, 100-103, 91 Cal.Rptr.2d 370 ; People v. Strong (1994) 30 Cal.App.4th 366, 373-376, 35 Cal.Rptr.2d 494 ; see also People v. Calistro, supra , 12 Cal.App.5th at pp. 394-396, 402-404, 218 Cal.Rptr.3d 765.) Although these decisions also involved the issue whether a section 10851(a) conviction was based on taking or driving, they are distinguishable for various reasons, including that the types of errors they addressed do not create a presumption of prejudice.

See footnote *, ante .