Filed 11/24/25  P. v. Sanchez CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

|  |  |
|---|---|
| THE PEOPLE, | B336220 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BA511351 |
| JERSAIN SANCHEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Herriford, Judge.  Affirmed.

Debbie Yen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Police pursued a white Ford F-250 truck after learning the truck was stolen.  With their sirens and lights on, they trailed the truck as it sped, weaved, and abruptly slowed on the 10 Freeway.  A police helicopter tracked the truck.  Two pursuing officers testified about the chase, detailing the many traffic violations they saw.  Defendant Jersain Sanchez rolled out of the truck as it was moving and ran away.  The truck crashed.  Police tackled and arrested Sanchez.  No one else was in the truck or in the area.  It was around 1:30 in the morning.

The jury heard from the truck owner Lorena Jovel, who testified she last had her truck two days before the chase.  She and her husband had driven it to a supermarket that day.  They locked it and secured it with a boot device before grocery shopping.  When they returned, the truck was gone.  No security footage captured the theft.

After hearing from Jovel and the two officers and viewing the videotaped chase, the jury convicted Sanchez of the two counts charged:  reckless evading (§ 2800.2; count 1) and driving or taking a vehicle without consent (§ 10851, subd. (a); count 2) (section 10851(a)).  All statutory citations are to the Vehicle Code.

The trial court separately found several prior convictions and aggravating factors.  It sentenced Sanchez to three years for the first count and eight consecutive months for the second.

On appeal, Sanchez argues the court prejudicially erred in instructing the jury on count 2.  We shall address the errors he asserts.  Neither was prejudicial.

I

The pivotal point here is that section 10851(a) criminalizes multiple acts, but the prosecution pursued only one of the available theories in its case in chief.

A defendant may be convicted of *taking* another's car. *Or* the defendant may be convicted of *driving* the car without the owner's consent and with the intent to deprive the owner of possession. (*People v. Lara* (2019) 6 Cal.5th 1128, 1135 (*Lara*).) A defendant may be convicted of both offenses, provided a substantial break separates the taking and the driving. (*See id.* at p. 1136.) Unlike the *taking* offense, the *driving* offense is not a theft crime. (*Ibid.*)

The information charged Sanchez with unlawfully *driving or taking* Jovel's truck without consent, and the verdict form followed this charge.

But the prosecution pursued only the *driving* theory at trial. The evidence conformed to this theory. Sanchez recognized this in his sentencing memorandum when he stated, with our emphasis, that he had been convicted of "VC 10851(a) *Felony Driving* a Vehicle without the Owner's Consent."

Sanchez's appeal takes a different tack. He argues the jury instruction for count 2 covered both theories under section 10851(a) yet omitted elements of these theories. Sanchez argues this fact invalidates his conviction. This argument is mistaken.

After inviting objections from counsel and receiving none relevant here, the trial court used the driving alternative in CALCRIM No. 1820, the pattern instruction for section 10851(a). As given, but with our emphasis, the instruction was:

"The defendant is charged in Count 2 with unlawfully taking or driving a vehicle.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant drove someone else's vehicle without the owner's consent;

3

"AND

"2. When the defendant drove the vehicle, he intended to deprive the owner of possession or ownership of the vehicle for any period of time.

"*A taking requires that the vehicle be moved for any distance, no matter how small.*

"A vehicle includes a passenger vehicle."
The instruction went on to define "driver" and "driving."

In this instruction, the optional italicized statement defining a taking is legally correct but inapplicable to the prosecution's theory of the case. The bench notes to the pattern instruction say the statement may be given if there is a question whether a vehicle that was taken was moved any distance.

Including this statement in this case was unnecessary. But this inclusion did not convert the instruction into an instruction on the alternative taking theory.

It is not reasonably likely that including this errant statement affected the verdict. (See *People v. Cross* (2008) 45 Cal.4th 58, 67 [giving an inapplicable instruction is generally only a technical error that does not constitute ground for reversal].)

We presume juries are intelligent and follow the trial court's instructions. (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1155 (*Mehserle*); *People v. Chhoun* (2021) 11 Cal.5th 1, 30.) This court warned this jury there may be inapplicable instructions. Then it instructed the jurors on the elements required to convict Sanchez of count 2. These elements were for the driving offense only, and Sanchez does not dispute they were phrased correctly. The instruction thus permitted the jury to convict Sanchez on a driving theory only.

4

The instruction concluded a trial that focused on Sanchez's driving. Following the evidence, the prosecutor elected the driving theory for count 2 in closing argument: the prosecutor told the jury "the issue" on this count was "the defendant drives someone else's vehicle, and did he intend to deprive the owner of it for any period of time." This was after the prosecutor discussed the evading charge at length, repeatedly telling the jurors to believe their eyes (the video) and arguing Sanchez's driving exhibited wanton disregard for safety.

In short, considering the instructions as a whole and the entire record, this instructional error was harmless by any standard. (See *Mehserle*, *supra*, 206 Cal.App.4th at p. 1155.) Sanchez's trial involved one theory under section 10851(a), and the trial court instructed the jury accordingly.

## II

Sanchez contends, and the prosecution on appeal agrees, there was another error. This error also was harmless.

We agree with the parties that the trial court's instruction erroneously omitted an element of the driving offense. But we conclude the omission was harmless beyond a reasonable doubt. (See *Lara*, *supra*, 6 Cal.5th at p. 1138.)

The Supreme Court decision in *Lara* leads the way.

Before *Lara*, there were two elements for the driving theory, which CALCRIM No. 1820 reflected. Currently, this instruction has a third element, to account for *Lara*. The third element is: "The driving occurred after a substantial break from the original theft of the vehicle."

*Lara* clarified the driving offense involves *posttheft* driving—driving after the theft is complete. If the defendant drove away just to effectuate the theft, there can be no separate

5

driving offense.  (See *Lara*, *supra*, 6 Cal.5th at pp. 1136–1138.)
Accordingly, the Court explained, the driving theory requires a
substantial break between the original theft and the challenged
driving.  (*Ibid.*)

The jury had not been instructed on this posttheft driving
element in *Lara*, but the high court concluded the omission was
harmless beyond a reasonable doubt.  (See *Lara*, *supra*, 6 Cal.5th
at p. 1138.)  In *Lara*, police set up surveillance on a stolen car
and caught the defendant driving it.  Nothing else tied the
defendant to the car's theft six or seven days earlier.  Although
the information charged the defendant with unlawfully driving
*and* taking the car, the prosecutor argued only a driving theory to
the jury.  The jury instructions did refer to an unlawful *taking*,
but they substantively focused on *driving*.  (*Id.* at pp. 1131–1132,
1137–1138.)

Sanchez says his case requires reversal because it is like
*People v. Jackson* (2018) 26 Cal.App.5th 371 (*Jackson*), not *Lara*.
In *Jackson*, an employee of a home staging business saw the
defendant load the company's chairs into a Toyota Land Cruiser.
The witness confronted Jackson.  Jackson got angry.  The witness
left to get help.  Police soon found Jackson asleep in the SUV,
which turned out to be stolen and was parked at an unspecified
distance from the first sighting.  (*Id.* at pp. 373–374, 380.)  There
was no direct evidence that Jackson drove the SUV.  (*Id.* at pp.
380–381.)  The prosecutor argued *both* taking and driving
theories to the jury.  And the court instructed the jury on *both*
theories, yet failed to give a unanimity instruction.  (*Id.* at pp.
376–377, 379–380.)

This case is different.  As we have explained, the
prosecution presented only the driving theory to the jury, the

6

prosecutor argued only this theory, and the trial court instructed only on this theory. *Jackson* is inapposite, as are the other cases Sanchez cites involving instructions on alternative legal theories.

*Lara* dictates the result here.

This trial was about Sanchez's driving. No direct evidence placed Sanchez at the supermarket, and the prosecution never argued Sanchez took the truck then. Two days after the original theft, video caught Sanchez fleeing police in the stolen truck and then fleeing the truck on foot, alone. No one suggested this driving related to the original theft. There is no question the jury determined Sanchez was the driver, as it convicted him of the separate count of fleeing a pursuing peace officer while driving recklessly.

As a matter of law, there was a substantial break between the original theft and Sanchez's videotaped drive. As in *Lara*, the failure to reference posttheft driving in the instruction for count 2 was harmless beyond a reasonable doubt.

We need not reach the parties' arguments about forfeiture and ineffective assistance of counsel.

### DISPOSITION

We affirm the judgment.

WILEY, Acting P. J.

We concur:

VIRAMONTES, J.        UZCATEGUI, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7