Filed 9/3/24  P. v. Hurd CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHARLES WAYNE HURD,<br><br>    Defendant and Appellant. | H050635<br>(Santa Cruz County<br>Super. Ct. No. 20CR02232) |

Defendant Charles Wayne Hurd was convicted by jury of two counts of second degree burglary (Pen. Code, § 459; counts 1 and 3), petty theft (Pen. Code, § 484; count 2), grand theft (Pen. Code, § 487, subd. (a); count 4), and felony taking or driving a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a); count 5).  Based on the issues defendant raises on appeal, we will reverse the conviction on count 4 and reduce the conviction on count 5.

## I.  BACKGROUND

The charges against defendant arose from two incidents in September and October of 2018.  As defendant does not challenge his convictions on counts 1 through 3, our factual summary is limited to the October 2018 incident on which counts 4 and 5 are based.

A pickup truck with copper wire in its bed was stolen from a Pacific Gas & Electric (PG&E) facility in Santa Cruz and was found about a mile away from the facility with its engine running.  Its ignition had been "jimmied" or "punched out."  Surveillance

video showed two people entering the facility and leaving with the truck. Defendant was later identified as one of the people who stole the truck.

On the same day, a PG&E employee inspected the warehouse where copper wire was stored and found that a significant amount was missing. Another PG&E employee testified over defense objection that the value of the missing wire was approximately $11,000. The employee arrived at that amount using her personal knowledge of the warehouse's inventory and information from a computer database that contained unit prices for various commodities. She did not know how the database was maintained or where the pricing information came from, but she knew that more than $1,000 worth of copper material was usually stored in the warehouse. The trial court took judicial notice that "according to the NASDAQ Commodity Tracker … the price per pound of copper was $2.74" on the day of the incident. Count 4 charged defendant with stealing more than $950 worth of copper wire.

Count 5 charged defendant with stealing the truck. With respect to that count, the trial court instructed the jury as follows: "The defendant is charged in Count 5 with unlawfully taking or driving a vehicle. To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant took or drove someone else's vehicle without the owner's consent; and, two, when the defendant did so, he intended to deprive the owner of possession or ownership of the vehicle for any period of time. A taking requires that the vehicle be moved for any distance, no matter how small."

The jury found defendant guilty as charged on counts 1, 3, 4, and 5. On count 2, the jury found defendant not guilty of grand theft but guilty of petty theft as a lesser included offense. The jury also found true an allegation that the manner in which the crimes were carried out indicated planning, sophistication, or professionalism. (Cal. Rules of Court, rule 4.421(a)(8).) The trial court sentenced defendant to a three-year upper term on count 1 and a consecutive one-year term on count 5. Punishment was

stayed on the remaining counts. The court directed that the final six months of the four-year sentence be served under mandatory supervision.

## II.    DISCUSSION

Defendant argues his conviction on count 4 must be reversed due to the erroneous admission of hearsay evidence. He also contends his conviction on count 5 must be reversed due to both insufficient evidence and instructional error.

### A. COUNT 4

Count 4 charged defendant with grand theft, which includes the element that the value of the stolen property exceeds $950. (Pen. Code, § 487, subd. (a).) The trial court also instructed the jury as to count 4 on the lesser included offense of petty theft, which applies to theft of property worth $950 or less. (Pen. Code, § 484.) The property relevant to count 4 was the copper wire stolen in October 2018.[1]

Evidence of the missing wire's value was provided by a PG&E employee who testified it was worth approximately $11,000. Defense counsel objected to her testimony on hearsay grounds, and the trial court overruled the objection. On appeal, defendant argues the evidence of the copper wire's value was erroneously admitted. The Attorney General contends the trial court properly exercised its discretion to admit the evidence under the hearsay exception for a business record under Evidence Code section 1271, and alternatively that any error was harmless. We review the rulings on the admission of evidence for abuse of discretion. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1010–1011.)

---

[1] The prosecutor also argued to the jury that it could find defendant guilty on count 4 under the alternative theory that the truck was worth more than $950, and the court instructed the jury that it was required to unanimously agree as to which act served as the basis for a guilty verdict. As we will explain *post*, there was insufficient evidence that the truck was worth more than $950, and the prosecutor's alternative argument therefore does not affect our analysis of count 4.

The Attorney General does not dispute that the employee's testimony was hearsay, and we agree that this testimony does not fall within the business records exception. Evidence Code section 1271 provides that "a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if:  [¶]  (a) The writing was made in the regular course of a business;  [¶]  (b) The writing was made at or near the time of the act, condition, or event;  [¶]  (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and  [¶]  (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."  Here, pricing information from a computer database was used by the testifying PG&E employee to estimate the value of the copper wire stolen in October 2018.  The employee consulted the database regularly, but she did not know how the pricing information was determined or how the database was maintained.  She thus could not testify to how or when the pricing information was input into the database, as would be required for admissibility under Evidence Code section 1271.  "The key to establishing the admissibility of a document made in the regular course of business is proof that the person who wrote the information or provided it had knowledge of the facts from personal observation."  (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 322.)  The trial court therefore abused its discretion in allowing the challenged testimony without the necessary foundation.

The Attorney General asserts any error was harmless because the PG&E employee also testified from personal knowledge that more than $1,000 worth of copper wire was usually stored in the warehouse, and the trial court ultimately took judicial notice of the price of copper on the day of the theft.  But neither piece of information cures the error.  The employee's affirmative response when asked whether more than $1,000 worth of copper material was stored in the warehouse "pretty much every day" does not establish the value of the wire stored there on the day in question.  Nor does it establish that more than $950 worth of copper was missing:  Another employee testified that "warehouse

4

folks" told him "the warehouse was empty of copper or missing a lot of copper." When he inspected the warehouse, he saw that some "bins were empty" but "a lot" of "tin covered copper that looks like aluminum" was still present. Without evidence establishing the *amount* of copper stolen, the judicially noticed fact that the copper's *value* was $2.74 per pound in October 2018 means little. Nor is there evidence that the testifying employee relied on a similar unit price in estimating the missing wire's value.

Although the Attorney General asserts that approximately 1,000 pounds of copper was missing from the facility in October 2018, the testimony establishing that fact actually pertained to a September incident that served as the basis for counts 1 and 2. Other testimony suggested it was impossible to determine how much of that copper was stolen versus how much had simply been used in the course of business. We note that while the trial court took judicial notice that the price of copper was $2.60 per pound in September 2018, which would make 1,000 pounds of copper worth $2,600, the testifying PG&E employee estimated that $4,100 worth of copper wire had been stolen in the September incident. We also note that despite the employee's testimony and the notice taken, the jury acquitted defendant of grand theft on count 2, convicting him of the lesser included offense of petty theft.

Had the testifying PG&E employee's estimate of the missing copper's value been properly excluded as based on inadmissible hearsay, the jury may have found defendant guilty of only the lesser petty theft on count 4 as it did on count 2. Because we find the error prejudicial under the state law standard of *People v. Watson* (1956) 46 Cal.2d 818, we do not reach defendant's argument that it may have risen to the level of federal constitutional error.

## B. COUNT 5

Count 5 charged defendant with violating Vehicle Code section 10851, subdivision (a), which "separately prohibits the acts of driving a vehicle and taking a vehicle." (*People v. Garza* (2005) 35 Cal.4th 866, 880.) "Except where a conviction is

based on posttheft driving (i.e., driving separated from the vehicle's taking by a substantial break), a violation of [Vehicle Code] section 10851 must be punished as a misdemeanor theft offense if the vehicle is worth $950 or less." (*People v. Bullard* (2020) 9 Cal.5th 94, 110 (*Bullard*); see Pen. Code, § 490.2.) In other words, where a defendant is charged with vehicle theft as a felony, the prosecution is required to prove as an element of the offense that the vehicle's fair market value was more than $950 at the time of the theft. (*People v. Jackson* (2018) 26 Cal.App.5th 371, 378; *People v. Bussey* (2018) 24 Cal.App.5th 1056, 1061; *People v. Gutierrez* (2018) 20 Cal.App.5th 847, 855 (*Gutierrez*); see Pen. Code, § 484, subd. (a) ["the reasonable and fair market value shall be the test"].) The parties agree the trial court did not instruct the jury on that element here. Defendant further argues there was insufficient evidence of the truck's value. The Attorney General contends the evidence was sufficient to establish value, the instructional error was harmless, and defendant forfeited any objection to the court's instructions. As we will explain, we find the evidence insufficient to support a felony conviction and will therefore reduce it to a misdemeanor. Given our conclusion, we do not reach the Attorney General's arguments regarding forfeiture and harmlessness.

### 1. The Evidence Was Insufficient to Meet the Felony Threshold

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) We presume the "existence of every fact that the trier of fact could reasonably deduce from the evidence" to support the judgment. (*People v. Medina* (2009) 46 Cal.4th 913, 919.) To overturn a conviction, "it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) But a "reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or

6

guesswork; a finding of fact must be an inference drawn from evidence rather than a mere speculation as to probabilities without evidence." (*People v. Rekte* (2015) 232 Cal.App.4th 1237, 1247.)

Mindful of the deferential standard of review, we nonetheless conclude there was no evidence from which a jury could appropriately determine the truck was worth more than $950 without engaging in speculation. Photographs and video footage established the truck was operable, but general appearance and operability do not speak to monetary value. And the testimony about PG&E's "very solid vehicle maintenance program" came from an employee who admittedly "didn't know anything about the truck" in particular.

The Attorney General suggests jurors could conclude based on common knowledge that a pickup truck in working condition was worth more than $950, citing *People v. Ortiz* (2012) 208 Cal.App.4th 1354. We accept the general proposition that jurors may "rely on their common knowledge" when determining an object's value. (*Id.* at p. 1366.) But *Ortiz* "involved jurors' common knowledge that a two-year-old BMW generally has substantial value" and the issue "was not the precise determination of the BMW's fair market value but, rather, whether the vehicle had sufficient value that the jury reasonably could infer the defendants committed a kidnapping with the intent to take the BMW." (*People v. Grant* (2020) 57 Cal.App.5th 323, 332, fn. 5 (*Grant*); see *Ortiz*, at pp. 1365–1366.)

In contrast here, the minimum monetary value of the truck is itself an element of the charged offense. Yet there was little or no evidence of the truck's age, miles driven, or mechanical condition (beyond mere appearance and operability). Under these circumstances, relying on common knowledge alone does not "provide[] the required precision." (*Grant*, *supra*, 57 Cal.App.5th at p. 332.) "If the People seek to excuse the production of evidence by urging the fact is one of common knowledge, the following test applies. First, 'is the fact one of common, everyday knowledge in that jurisdiction, which everyone of average intelligence and knowledge of things about him can be

7

presumed to know; and [second,] is it certain and indisputable?' " (*People v. Davis* (2013) 57 Cal.4th 353, 360.)  Although simple enough to establish through testimony or other evidence, the fact that a used pickup truck of uncertain age and mileage would be worth more than $950 on the open market as of October 2018 cannot be presumed commonly known, certain, or indisputable.  Nor do we know whether the jurors themselves would have unanimously agreed on that fact, given that they were not instructed on monetary value as an element of the offense.  As a result, the felony status of the conviction under Vehicle Code section 10851 cannot stand.

##### 2.  The Proper Remedy Is To Reduce of the Conviction to a Misdemeanor

Were our reversal of the felony conviction on count 5 premised solely on the conceded instructional error, retrial on the charged felony would be permissible.  But we have also found no substantial evidence of the omitted element.  It was clear years before defendant's 2022 trial that monetary value is an element of felony unlawful taking (i.e., a felony violation of Veh. Code, § 10851 based on vehicle theft), as distinct from unlawful driving (i.e., a violation based on posttheft driving).  (See *People v. Page* (2017) 3 Cal.5th 1175, 1187–1188; *Bullard*, *supra*, 9 Cal.5th at p. 110; cf. *Gutierrez*, *supra*, 20 Cal.App.5th at p. 858.)  And as the Attorney General acknowledges, there was no allegation of post-theft driving in this case.  (Cf. *Bussey*, *supra*, 24 Cal.App.5th at p. 1062.)  Although retrial on the felony offense is not available to the prosecution, defendant does not dispute that the remaining elements of unlawful taking were established.  We will therefore reduce the felony conviction to a misdemeanor.  (See *People v. Navarro* (2007) 40 Cal.4th 668, 671; accord, *Grant*, *supra*, 57 Cal.App.5th at p. 332.)

### III.    DISPOSITION

The judgment is reversed, the conviction on count 4 is vacated, and the conviction on count 5 is reduced to a misdemeanor.  The matter is remanded to the trial court, where the prosecution may elect either to retry defendant for grand theft on count 4 or to accept

a conviction for petty theft on that count, after which the trial court shall fully resentence defendant accordingly.

_____
Grover, Acting P. J.

**WE CONCUR:**

_____
Lie, J.

_____
Bromberg, J.

H050635
*People v. Hurd*